MINUS L. McELROY *et al.*, Plaintiffs-Appellants, *v.* LARRY PATTON and L. B. PATTON, d/b/a PATTON CONSTRUCTION COMPANY, Defendants-Appellees.

(No. 69-52;

Fifth District—December 14, 1970.

William W. Schooley, of Granite City, for appellants.

Dale G. Hyle, of Granite City, (Davis B. Stutsman, of counsel,) Walder & Williams, of East St. Louis, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:

The record before us is not in dispute and, concisely stated, reflects that the McElroys entered into an oral agreement with the Pattons for certain repair work to be done to their home, the price to be $1,963. The basement walls and a concrete basement floor were to be poured; new steps at the rear of the house were to be constructed and the front steps were to be removed and replaced. After the job was performed and ostensibly completed, problems arose: the basement walls cracked and

began to leak; the house did not rest squarely on the foundation and (if we are to believe the record, which we must) the legs of the water heater in the basement were encased in the newly poured concrete floor! The McElroys then brought action for damages resulting from breach of the oral contract for work to be performed in a workmanlike manner.

■■ At the ensuing trial on the merits, there unfolded ample evidence and testimony from which the jury could readily find, and obviously did, that the walls of the basement started to crack within six months after the job was completed; that the concrete walls were poured in two different batches; that the northeast corner of the house was sitting off the foundation; that forms for a concrete wall were used on the inside, but plain dirt was used on the outside walls; that the McElroys' water heater in the basement was not moved and that its legs were completely encased in the poured cement floor; that the furnace was jogged off its base and never replaced. Even defendants' witnesses admitted that it is not normal to split a concrete pour, and we presume that a juror could exercise his "own observation and experience in the affairs of life" (as the court properly instructed) to reach the conclusion that it is not a customary practice to encase the legs of a water heater in a new concrete floor! These were questions of fact—legitimate questions of fact— all of which were within the pale of the jury's task. The jury awarded the McElroys $6,000.

■■ The Pattons then filed a motion in the alternative for judgment *n.o.v.*, in arrest of judgment or for new trial. The court granted a new trial and this appeal followed—appellants contending that the trial judge abused his discretion in ordering a new trial. The motion alleged a number of supporting reasons: that the verdict was contrary to the evidence; that the verdict was contrary to law; that the trial court erred in the admission of certain pictures; that the court erred in not directing a verdict for the Pattons; that the allegations of the amended complaint were not proved; and "that the verdict of the jury was in excess of any damage to the property of plaintiffs or any amount asked for in said complaint." It is only this last point, an excessive verdict, to which the Pattons address themselves in their brief and argument on this appeal. And since the Pattons do not consider, cite, argue or rely on any of the other points or reasons recited in the motion, they will not be considered here. A reviewing court should not speculate in a vacuum as to causal rationale nor engage in a form of appellate roulette.

■■■ At the head end of our consideration of this appeal, we would call attention to the importance of a trial court seting forth its reasons for

dispositive action taken. The basis or reasons which prompted the trial judge to grant a new trial here are unknown. We regret this absence. Certainly a reviewing tribunal in its rather sterile and cloistered hermitage is materially assisted if it has before it the reasons which result in a trial court's action. It need not be a lengthy or elaborate, academic or scholarly masterpiece. A concise and abbreviated statement of reasons would suffice—either dictated onto the record, stated orally in open court, chronicled in a short memorandum, or by a brief finding in the order itself. Numerous opinions of reviewing courts in this state have emphasized how helpful it is when a trial court indicates, either on the record or by memorandum, what factor it is that generates an appealable ruling. The practice has been both "urged" and "encouraged". (*Reese v. Crain*, 98 Ill.App.2d 380, 240 N.E.2d 358; *Rowoldt v. Cook County Farmers Mut. Ins. Co.*, 305 Ill.App. 93, 26 N.E.2d 903.) We think it appropriate to again emphasize and underscore the observation made in *Pillow v. Long*, 299 Ill.App. 542, 20 N.E.2d 896, at pages 896-897:

"When a new trial is granted, the views of the trial judge expressed in sustaining the motion therefor should be incorporated in the record in order that the reviewing court may know what prompted his action."

And now to the gravamen of this appeal: all concerned agree that the only question before this court is did the trial judge properly exercise his discretion by granting a new trial? There is a legion of cases dealing with this issue, and it would unduly prolong this opinion to catalogue at length such a bibliography and index. The following brief and salient citations will serve:

"A court of review will not reverse an order of a trial court, granting a new trial, unless the record clearly shows an abuse of discretion. An abuse of discretion is shown, however, where it appears that the trial court set aside a verdict and granted a new trial merely because it would have decided the case differently had it been the trier of fact, or because it feels that inferences or conclusions other than those drawn by the jury are more reasonable. The trial court cannot substitute its inferences and conclusions of fact for those drawn by the jury if those drawn by the jury find reasonable support in the evidence, *Foster v. VanGilder*, 65 Ill.App.2d 373, 213 N.E.2d 421, for it is the jury's function to weigh the conflicts and discrepancies in the evidence, to determine if the witnesses' testimony is credible, in whole or in part, and to draw the ultimate conclusions of fact. *Finley v. New York Cent. R. Co.*, 19 Ill.2d 428, 167 N.E.2d 212." *Dunlavey v. Patti*, 79 Ill.App.2d 442, 223 N.E.2d 858, 860.

See also, *Dobson v. Rosencranz*, 81 Ill.App.2d 439, 226 N.E.2d 296, 298; *Panepinto v. Morrison Hotel, Inc.*, 71 Ill.App.2d 319, 218 N.E.2d 880, 889.

"We are not unmindful of the rule and cases which hold that the trial judge is allowed broad discretion in granting motions for a new trial, and that his action will not be reversed on appeal except in case of clear abuse of such discretion; but this rule, like all others, has its limitations. A judge is not empowered to set aside a verdict in any case simply because he does not agree with it." *Hall v. Chicago & N. W. RY Co.*, 349 Ill.App. 175, 110 N.E.2d 654, 657.

"Under our system of jurisprudence, jury determinations can be set aside only when a court of review, or a trial court upon proper motion, is clearly satisfied that they were occasioned by passion or prejudice or found to be wholly unwarranted from the manifest weight of the evidence." *Kahn v. James Burton Company*, 5 Ill.2d 614, 126 N.E.2d 836, 841.

And, as was stated in *Loucks v. Pierce*, 341 Ill.App. 253, 93 N.E.2d 372, at page 376:

"This is simply a part of the general principle that a new trial should not be allowed, even though technical grounds for it exist, unless it appears that upon a retrial a different result will probably be reached."

Against this decisional backdrop we must analyze the only point relied upon by appellees in attempting to preserve and protect the trial court's allowance of the new trial: excessive verdict. Appellees blandly contend that the trial court "concluded that the excessive verdict was an indication of either prejudice or sympathy by the jury and that therefore the defendant did not receive a fair trial." We have combed this record, and we find no supportable basis for such conclusion. As we have pointed out earlier, there is no memorandum of reasons for the judge's action; there is nothing at all in the report of proceedings which would dictate that this was the reason for the new trial. The motion itself contained a number of alleged grounds, but the trial court did not see fit to indicate which reason cited, if any, was the foundation for his ruling. All that this court knows is that appellees have selected *only* the issue of "*excessive verdict*" to attempt to justify their new trial. It is a truism to say that this was an excessive verdict. Granted. The verdict of $6,000 exceeded both the *ad damnum* ($5,000) sought and the maximum proof of damage ($4,800). But to acknowledge that the verdict is excessive is not to infer thereby that a new trial is the unavoidable result.

■■ The law in Illinois has long been held to be that unless the amount of the verdict is of such magnitude as to reflect, and result from, passion and prejudice, the amount of the verdict is primarily within the

discretion of the jury. (*Morella v. Melrose Park Cab Company*, 65 Ill.App.2d 175, 212 N.E.2d 106, 110; *Gleason v. Cunningham*, 316 Ill.App. 286, 44 N.E.2d 940, 943.) Appellees urge that a $6,000 verdict in the case at bar was so excessive as to indicate passion and prejudice on the part of the jury. We cannot agree. The verdict was but one-fifth more than the evidence of highest damage, and but one-sixth more than the *ad damnum*. We cannot say that this is of such magnitude as to be grounded upon prejudice and sympathy. This was not a personal injury action with severe or extensive permanent injuries; this was an action sounding of contract where the quantum of damages was, as the jury was correctly instructed, "reasonable expense of necessary repairs." On the posture of this record we are wholly unable to assess passion or prejudice to this jury, or to conclude that their verdict was not supported by the evidence. *Kahn v. James Burton Company, supra.*

■■ But where the verdict returned does exceed the proven damages, it must be corrected. The practice of entering or ordering a remittitur has long been an accepted practice in Illinois and it has been consistently acknowledged to be promotive of both the administration of justice and putting an end to litigation. (15 Illinois Law and Practice, *Damages*, par. 199; *Jensen v. Richardson*, 83 Ill.App.2d 237, 235 N.E.2d 397, 399; *Gleason v. Cunningham*, 316 Ill.App. 286, 44 N.E.2d 940, 944.) The *Jensen* and *Gleason* cases each involved remittiturs of two-fifths of the verdict returned by the jury.

■■ We hold that the practice of remittitur should have been followed in this cause. A trial is a total entity, and the record before us demonstrates without question that competent counsel fairly tried and presented this case to the jury. The verdict in favor of the McElroys was fully supported by the evidence as to liability and no error appears of record. The ends of justice and the disposition of litigation dictates that a remittitur should have been proffered. Although remittitur is a judicial determination of recoverable damages and is not equated with mutual concessions by, or agreement among, parties litigant (*Banks v. Chicago Grain Trimmers Association*, 390 U.S. 459, 467, 88 S.Ct. 1140, 1145), a court does not have authority to enter or order a remittitur unless the prevailing party litigant consents thereto. (*Baker v. Spaulding Women's Apparel, Inc.*, 83 Ill.App.2d 455, 228 N.E.2d 100; *Augustine v. Kaufman*, 338 Ill.App. 591, 88 N.E.2d 378, 379.) This rule of the entry of a remittitur only with the consent of the plaintiff is applicable only in jury trials, such as the case at bar. (*Horvath v. Spector Freight System, Inc.*, 102 Ill.App.2d 112, 243 N.E.2d 471, 472.)

We consider that the proper disposition here is to reverse the action of the trial court in allowing the motion for new trial, and to remand

878

this cause to afford the appellants an opportunity to accept a remittitur of $1,200 from the $6,000 verdict to conform to the proof, with the knowledge that a refusal to accept such remittitur will result in the reinstatement of the order allowing a new trial.

Reversed and cause remanded with directions.

EBERSPACHER, P. J., and GOLDENHERSH, J., concur.